IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02038-KLM

TIMOTHY JAMES HAYENGA,

    Plaintiff,

v.

C. GARTH, Adams County Sheriff, and
L. KESTAL, Adams County Sheriff,

    Defendants.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss for Failure to State a Claim** [#37][1] (the "Motion"). Plaintiff, who proceeds in this matter pro se,[2] filed a Response [#38] in opposition to the Motion, and Defendants filed a Reply [#41]. Plaintiff subsequently filed two Surreplies [#44, #45].[3] The parties have consented to proceed

---

[1] "[#37]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Order.

[2] The court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[3] Plaintiff filed the Surreplies [#44, #45] without properly seeking leave of the Court by filing a motion asking permission to do so. *See Surreply* [#44] at 1 ("Just a quick letter to address the Court and discuss qualified immunity."). Surreplies are not contemplated by the Federal Rules of

-1-

before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2(d). *See* [#31, #47]. The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#37] is **GRANTED in part and DENIED in part.**

## I. Background

Plaintiff is currently an inmate at the Trinidad Correctional Facility in Model, Colorado. According to the Amended Complaint,[4] prior to his incarceration, Plaintiff had an outstanding warrant for felony possession with intent to distribute[5] and for weapon possession by a previous offender. *Am. Compl.* [#21] at 10. Defendants are both sheriff's deputies with Adams County. *Id.* At 2-3. The circumstances surrounding their June 2, 2018 arrest of Plaintiff form the basis for Plaintiff's claim against them.

Prior to his arrest, Plaintiff was walking on the sidewalk in a residential neighborhood when Defendants approached in their patrol vehicles. *Id.* at 4. Plaintiff got into his car, and Defendants promptly boxed him in so that he could not drive away. *Id.* At this point,

---

Civil Procedure or the Local Rules of Practice. However, "[g]enerally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). "Materials, for purposes of this framework, include both new evidence and new legal arguments." *Id.* (internal quotation marks and citation omitted). Here, Defendants have not moved to strike the Surreplies, and the Court has considered the Surreplies along with the other briefs.

[4] For the purposes of this Motion [#37], the Court takes all allegations in the Amended Complaint [#21] in the light most favorable to Plaintiff as the nonmovant. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The Court notes that Plaintiff attached his June 2, 2018 arrest affidavit to the Amended Complaint, which includes various statements made by Defendants. *Am. Compl.* [#21] 10-13. Plaintiff generally denies these statements in his Amended Complaint, asserting that they are "contradicting [sic] and false." Id. at 4. Because the Court must construe the facts most favorably to the non-moving party, the affidavit statements are deemed disputed by Plaintiff for the purpose of adjudicating the Motion [#37].

[5] The Amended Complaint [#21] fails to provide any further details regarding this warrant.

Plaintiff alleges that Defendant Curtis Garth ("Garth") pointed his gun at him, causing him to flee his car in fear. *Id.* Defendants gave chase, and Plaintiff vaulted a fence and ran into a back yard before Defendants caught up. *Id.*

Plaintiff alleges that both officers utilized their tasers against him during the ensuing struggle. *Id.* He also alleges that Defendant Garth used his fists and knees to deliver blows to Plaintiff. *Id.* Further, Plaintiff alleges that Defendant Lance Kestal ("Kestal") punched his face multiple times, and that he sustained injuries as a result of the blows from both Defendants. *Id.* Eventually, Plaintiff was handcuffed and then punched in the stomach by one Defendant.[6] After the struggle ended, Plaintiff was walked to a patrol car and placed in the back seat for an unspecified length of time. *Id.* Plaintiff alleges that the temperature reached ninety degrees on the day of his arrest and that the air conditioning was not on in the patrol car. *Id.* As a result of Defendants' actions, Plaintiff alleges that he suffered "multiple abrasions, a concussion, severe dehydration, acute kidney failure, fractured jaw, and an eye that was swollen shut." *Id.*

Plaintiff initiated this lawsuit on August 10, 2018, *see Compl.* [#1], and filed an Amended Complaint [#21] on November 16, 2018. Plaintiff asserts that he was subjected to excessive force resulting in violations of his rights under the Fourth Amendment. *See Order* [#26] at 2 (construing Plaintiff's allegations as such). As relief, Plaintiff seeks $100,000 in damages, court costs, medical costs, and an injunction in the form of heightened training requirements for the Adams County Sheriff's Department. *Am. Compl.* [#21] at 4. In the present Motion [#37], Defendants seek dismissal of the claim pursuant

---

[6] Plaintiff does not indicate which Defendant delivered the blow.

to Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

Similarly, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 (citation omitted).

Further, "[t]he plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 566 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

To determine if a complaint survives a motion to dismiss, courts utilize Rule 8, instructing that "[a] plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *Id.* Indeed, "Rule 8(a)'s mandate. . . has been incorporated into the 12(b)(6) inquiry." *United States ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims." *Tuttamore*, 429 F. App'x at 689.

### III. Analysis

Liberally construing the Amended Complaint, Plaintiff argues that Defendants used excessive force in violation of the Fourth Amendment: (1) when they "deployed tasers" against him, (2) when he was struck by them after being tased, (3) when he was "punched in the stomach while handcuffed" by a defendant, and (4) when he was "placed in the

backseat of cop car [sic] with no air on a 90 [degree] day." *Am. Compl.* [#21] at 4. Defendants argue that they are entitled to qualified immunity on all aspects of this claim. *Motion* [#37] at 3.

Certain government officials may be exempt from liability when sued in their individual capacities, as a result of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). When a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Courts may exercise discretion regarding which of the two prongs to address first, as the failure of a single prong will trigger qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

When determining whether allegations of excessive force rise to the level of stating a viable constitutional claim, the Court "must slosh [its] way through the factbound morass of 'reasonableness.'" *See Scott v. Harris*, 550 U.S. 372, 383 (2007). In the Tenth Circuit, "[w]e treat excessive force claims as seizures subject to the reasonableness requirement of the Fourth Amendment," and as such, "to establish a constitutional violation, the plaintiff must demonstrate the force used was objectively unreasonable." *Davis v. Clifford*, 825 F.3d 1131, 1134 (10th Cir. 2016) (quoting *Havens v. Johnson*, 783 F.3d 776, 781 (10th Cir. 2015)). The test considers the totality of the circumstances, "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Havens*, 783 F.3d at 781-82 (quoting *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) (internal quotation marks omitted)).

The Court weighs three factors to determine whether excessive force has been adequately alleged: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Davis*, 825 F.3d at 1135 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989) (alteration omitted)).

Courts weigh two major considerations when contemplating the severity of a crime under the *Graham* factors. First, the felony or misdemeanor status of the crime is an essential consideration. *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Second, whether the crime at issue is accompanied by violence is an important consideration. *Estate of Ronquillo*, 720 F. App'x at 438.

When considering the threat that the plaintiff posed to the defendants, courts inquire as to whether the plaintiff could reasonably be seen as dangerous. *Id.* To this end, the court in *Waters v. Coleman* reiterated that "[i]t is well-established that '[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back the officer would be justified in using more force than in fact was needed.'" 632 F. App'x 431, 438 (10th Cir. 2015) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004)). Furthermore, if the plaintiff was violent during the encounter, this factor can weigh against the plaintiff. *Casey*, 509 F.3d at 1281. Finally, whether the plaintiff brandished a weapon or made threats toward the officers is considered when weighing this factor. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1319-1320 (10th Cir. 2009).

When weighing the third *Graham* factor, a "key fact" in determining whether Plaintiff has stated an excessive force claim is whether Plaintiff has alleged that he was or was not struggling or resisting at the time force was applied. *See Waters*, 632 F. App'x at 437-38

("The key fact here is that while Officer Jones was applying force, Mr. Ashley was resisting being taken into custody. . . . [T]he key fact is that the struggle was ongoing when Officer Coleman applied the force that is complained of."). Further, "precedent is clear that continued use of force after an individual has been subdued is a violation of the Fourth Amendment." *Perea v. Baca*, 817 F.3d 1198, 1205 (10th Cir. 2016).

When addressing the second prong of the qualified immunity analysis, courts inquire as to whether the defendant's actions violated clearly established standards. *Saucier v. Katz*, 533 U.S. 194, 208 (2001). Generally, this requires the plaintiff to produce a Supreme Court or Tenth Circuit case on point. *Casey*, 509 F.3d at 1284. However, the Tenth Circuit has adopted a "sliding scale," where: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). If the three *Graham* factors clearly weigh in favor of the plaintiff, then no further citation to case law is needed, a violation is established, and qualified immunity will not be granted to that defendant. *Casey*, 509 F.3d at 1284.

The three *Graham* factors must be considered "at the precise moment that the officer used force." *See Estate of Ronquillo by & through Estate of Sanchez v. City & Cty. of Denver*, 720 F. App'x 434, 438 (10th Cir. 2017) (citing *Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010) ("We must consider whether Agent Durastanti could have reasonably perceived he was in danger at the precise moment that he used force . . . ."); *accord Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995) ("The reasonableness of Defendants' actions depends . . . on whether the officers were in danger at the precise moment that they used force . . . ."). Thus, courts will frequently divide an

excessive force claim asserting multiple uses of force by separately analyzing each use of force to determine whether the force was constitutionally permissible at the precise moment it was used. *See, e.g.*, *McCoy v. Meyers*, 887 F.3d 1034, 1048 (10th Cir. 2018) (bifurcating excessive force claim analysis between pre-restraint conduct (consisting of striking the plaintiff and placing him in a carotid restraint) and post-restraint conduct (consisting of again striking him and placing him in a second carotid restraint)); *Harper v. Rose*, No. 1:09-cv-153-TC, 2012 WL 1150463, at *3 (D. Utah Apr. 5, 2012) (separating excessive force claim into three events to aid analysis: (1) an initial tasing, (2) a "drive-stun," and (3) a fight on the ground). The Court need not break up an excessive force claim into separate incidents of force if there is no analytical benefit to doing so. *See, e.g.*, *Alusa v. Salt Lake County*, No. 2:11-cv-184, 2013 WL 3946574, at *8 (D. Utah Aug. 1, 2013) (denying request to bifurcate analysis of excessive force claim into two separate incidents of force because there would not be "any benefit"). In other words, to the extent analysis of the *Graham* factors is *not* materially impacted, multiple uses of force may be analyzed together. *See id.* Thus, to the extent analysis of the *Graham* factors *is* materially impacted, multiple uses of force should be analyzed separately. *See, e.g.*, *Estate of Ronquillo*, 720 F. App'x at 439-40 (on appeal from dismissal under Fed. R. Civ. P. 12(b)(6), separately analyzing single excessive force claim as two independent instances of force consisting of (1) forcible removal from vehicle, and (2) subsequent use of deadly force).

Here, the Court finds that Plaintiff's interactions with Defendants during the course of his arrest present four critical points which are analytically distinct under the *Graham* factors: (1) the two tasings while Plaintiff was actively fleeing; (2) the physical strikes by Defendants after Plaintiff was caught but before he was restrained; (3) the blow to Plaintiff's

stomach after he was handcuffed; and (4) Plaintiff's time spent waiting in a hot car. Thus, the Court analyzes each instance of force separately.

**A.   Tasers**

After fleeing Defendants and leaping a fence, Plaintiff was tased by both Defendants. *Am. Compl.* [#21] at 4 ("Both deputy Garth and Deputy Kestel deployed tasers against me."). Plaintiff contends that this is an excessive use of force in violation of the Fourth Amendment. *Id.* He provides no additional allegations regarding Defendant's use of tasers. *Id.* For example, he does not allege whether he was hit simultaneously by both tasers or, if not, how much time elapsed between each tasing. He also does not state what his own actions were at the time of the tasings, aside from admitting that he was in flight from the officers. *Id.*

The first *Graham* factor, the severity of the crime, favors Defendants. Defendants argue that the felony warrant indicates a degree of severity. *Motion* [#37] at 5. The Court agrees. Among other crimes, Plaintiff was wanted for possession of a weapon by a previous offender in violation of Colo. Rev. Stat. § 18–12–108 (2018), which is a felony and carries a minimum sentence of a year in prison. Colo. Rev. Stat. §18–1.3–401 (2018). Felonies are deemed more severe than when the underlying crime is a municipal code violation or a misdemeanor, for which the weight of this factor would typically fall in a plaintiff's favor. *See Clark v. Bowcutt*, 675 F. App'x 799, 807 (10th Cir. 2017); *Hinton v. City of Elwood*, 997 F.3d 774, 781 (10th Cir. 1993); *White v. Martin*, 425 F. App'x 736, 745 (10th Cir. 2011). As a result, this factor weighs in favor of Defendants.

The second *Graham* factor, the threat that Plaintiff posed to Defendants and others, weighs in favor of Defendants. The threat to the officers must be viewed at the precise

moment of the use of force. *Estate of Ronquillo*, 720 F. App'x at 438. Defendants argue that their knowledge of Plaintiff's warrant made the threat posed against themselves more serious. *Motion* [#37] at 6. The Court agrees. The underlying crime speaks to the second factor, as the possible possession of a weapon is an essential consideration of whether Defendants could have reasonably felt threatened. *Estate of Larsen*, 511 F.3d at 1260-1261; *Am. Compl.* [#21] at 4. However, Plaintiff does not allege that he displayed a weapon or made threats to the officers during the chase—factors that tend to be considered in weighing the second *Graham* factor. *Am. Compl.* [#21] at 4, *Thomson*, 584 F.3d at 1319-1320.[7] Ultimately, though, the Court finds that this factor weighs slightly in favor of Defendants. While Plaintiff was in flight and perhaps not an immediate threat to the officers, a chase with a suspect who has a warrant for weapon possession is exactly the "tense, uncertain, and rapidly evolving situation that we do not like to second-guess using the 20/20 hindsight found in the comfort of a judge's chambers." *Phillips v. James*, 422 F.3d 1075, 1084 (10th Cir. 2005).

Finally, the Court considers Plaintiff's flight and resistance of arrest. *Graham*, 490 U.S. at 396. At the time of the tasing, Plaintiff admits that he was actively fleeing from Defendants. *Am. Compl.* [#21] at 4. "The Fourth Amendment permits increased force when a subject is attempting to run away and thereby evade capture." *Casey*, 509 F.3d at 1281. As a result, this factor weighs heavily in favor of Defendants.

---

[7] Nevertheless, Plaintiff fled from the officers in the exercise of their legal duties. Plaintiff's assertion that he fled his car in fear because Officer Garth pointed his gun at him patently ignores the fact that Plaintiff knew he was subject to outstanding warrants and knew that Defendants were police officers. An officer's brandishing of his service weapon under these circumstances is far from unreasonable. On the other hand, Plaintiff's decision to flee could very likely be perceived by the officers as a demonstration of his unwillingness to be arrested calmly, the sort of conduct which is often a threat to officers and the community.

Even viewing the totality of the circumstances in the light most favorable to Plaintiff, he has not established that either Defendant's use of a taser on a suspect who had a felony warrant and was in flight was a constitutional violation.

Accordingly, the Motion [#37] is **granted** to the extent that the element of Plaintiff's claim for excessive force with regard to the use of tasers is **dismissed without prejudice**.[8] *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should only attach to a dismissal when plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

**B.   Physical Strikes**

After being caught by Defendants and tased, Plaintiff asserts that he was physically struck by both Defendants. *Am. Compl.* [#21] at 4. Plaintiff alleges that Defendant Garth "struck me multiple times with closed fists" and "also kneed me." *Id.* Additionally, Plaintiff alleges that Defendant Kestal "struck me in the face multiple times." *Id.* Plaintiff does not assert whether he was resisting the officers when the blows landed but does admit that he was fleeing before the altercation took place. *Id.*

First, as discussed above, the severity of the underlying crimes at issue weighs in favor of Defendants. *See supra* § III.A.

The second *Graham* factor favors Defendants. Defendants argue that knowledge of Plaintiff's warrant for possession of a firearm makes the perception that Plaintiff could

---

[8] In the Surreply, Plaintiff states new allegations which indicate the tasing may have occurred when he was incapacitated and lying on the ground, disoriented. *Surreply* [#46] at 2. The Court notes that when adjudicating a motion under Rule 12(b)(6), it cannot consider additional allegations made by Plaintiff solely in the briefs. *Mobley*, 40 F.3d at 340. However, as indicated in the Conclusion of this Order, Plaintiff will be given an opportunity to file a second amended complaint if he so desires, in which he should include all pertinent allegations on this and other elements of his claim which are dismissed without prejudice.

have availed himself of a weapon objectively reasonable. *Motion* [#37] at 6. The Court agrees. However, Plaintiff had previously been tased, and there are no allegations that he was brandishing a weapon or making threats to the officers post-tasings. *See Am. Compl.* [#21] at 4. Despite this, Defendants were now closer in proximity to Plaintiff, which should be considered when assessing the threat. *Estate of Larsen*, 511 F.3d at 1260-61. This, combined with the reasonable perception that Plaintiff may have had a weapon, is enough to weigh this factor in favor of Defendants. *See Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1251 (10th Cir. 2013).

The third *Graham* factor is neutral relative to this use of force. Plaintiff does not state whether he was resisting, and his previous flight had ended. *Am. Compl.* [#21] at 4. However, Plaintiff had previously attempted to flee Defendants. *Id.* Because Plaintiff fails to allege specific facts as to his level of struggle, this factor does not weigh in favor of either side.

Under the weight of these three factors, Plaintiff has not established that the force used on him was unreasonable. Officers have the right to use some degree of physical coercion to effect an arrest. *Graham* 490 U.S. at 109. But "[t]he degree of physical coercion that law enforcement officers may use is not unlimited." *Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007). However, "[not] every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal citation and quotation marks omitted). In *Serrano v. United States*, _ F. App'x _, _ 2019 WL 453615, at *2 (10th Cir. Feb 5, 2019), the plaintiff, a wanted felon, fled police and was struck in the face by an officer during the course of his arrest. The Tenth Circuit Court of Appeals found that the defendant's use of force was

objectively reasonable because the plaintiff had failed to aver that he was compliant and not resisting. *Id.* at *5. Similarly, Plaintiff fails to allege that he was not resisting, but admits he was fleeing and was wanted for a felony, thus he could be reasonably believed to have a weapon on his person. *Am. Compl.* [#21] at 4. As a result, Plaintiff has not sufficiently alleged a constitutional violation of his Fourth Amendment rights. *See Estate of Larsen*, 511 F.3d at 1259.

Accordingly, the Motion [#37] is **granted** to the extent that the element of Plaintiff's claim for excessive force with regard to the physical blows is **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

**C.    Blow to the Stomach**

After Plaintiff was tased and struck by Defendants, he was placed in handcuffs and "punched in the stomach." *Am. Compl.* [#21] at 4. Plaintiff contends that he "posed no threat to the officers at any time." *Id*. Plaintiff does not plead whether he was otherwise resisting the officers. *Id.*

First, as discussed in Section III.A., the severity of the underlying crime at issue weighs in favor of Defendants. *See supra* § III.A.

Second, the Court considers Plaintiff's threat to Defendants and others at the time when the blow to his stomach occurred. The ultimate question is whether Plaintiff could "reasonably have been seen as dangerous." *Casey*, 509 F.3d at 1281. Defendants posit that Plaintiff could be seen as dangerous because he might have availed himself of a weapon when he dove into his car. *Motion* [#37] at 6, *Am. Compl.* [#21] at 4. However, this does not justify the use of force after Plaintiff had already been handcuffed and was less likely to avail himself of a weapon. *Id.* Plaintiff asserted that he posed "no threat" to

Defendants at any time but did not plead facts indicative of his level of struggle at the time of the punch. *Id.* Ultimately, however, the Court finds that this factor weighs in favor of Plaintiff, because the threat to Defendants was greatly diminished by the placement of handcuffs on him. *See Fischer v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009).

The third *Graham* factor also weighs in favor of Plaintiff. Plaintiff was in handcuffs by the time of the alleged punch. *Am. Compl.* [#21] at 4. Plaintiff has not indicated that he was otherwise struggling or resisting arrest after he had been caught and placed in handcuffs. *Am. Compl.* [#21] at 4. Because of this, this factor weighs in favor of Plaintiff. See *Weigel v. Broad*, 544 F.3d 1143, 1152-53 (10th Cir. 2008) (Alleged force could be excessive once the plaintiff was restrained, even though he had previously put up significant resistance).

Thus, under the totality of the circumstances, Plaintiff has sufficiently alleged that Defendants used unreasonable force in violation of his Fourth Amendment rights when they punched him, and must next demonstrate that the alleged violation was clearly established. *Saucier*, 533 U.S. 208. Defendants assert that Plaintiff has not proven that the constitutional violation was clearly established. *Motion* [#37] at 6. Under the "sliding scale" standard of *Pierce v. Gilchrist*, 359 F.3d at 1298, the Court finds that the weight of the *Graham* factors is not obvious enough to serve as adequate notice of unconstitutional conduct, as it did in *Casey v. City of Federal Heights*. In particular, the severity of the crime here weighs considerably more in favor of Defendants than it did in *Casey*. *See Casey*, 509 F.3d at 1281 (stating that the underlying crime was a misdemeanor). Thus, the Court turns to an inquiry of whether the conduct was clearly established to be unconstitutional by examining the case law of the Tenth Circuit. Here, Plaintiff asserts that he was tased and

handcuffed before he was struck in the stomach. *Am. Compl.* [#21] at 4. These facts give rise to the plausible conclusion that Plaintiff was subdued. "Our precedent is clear that continued use of force after an individual has been subdued is a violation of the Fourth Amendment." *Perea*, 817 F.3d at 1204-5; *accord Dixon v. Richter*, 922 F.2d 1456, 1463 (10th Cir. 1991) (suspect hit with flashlight and beaten after submitting). As a result, Plaintiff has alleged facts to indicate that the law was clearly established that Defendant's conduct was objectively unreasonable.

Accordingly, the Motion [#37] is **denied** with regard to Plaintiff's claim stemming from the blow to the stomach.

## D.    Extreme Temperature

After the scuffle had ended and Plaintiff was under the control of Defendants, Plaintiff asserts that he was placed into a patrol car and left in the car without air conditioning for an unspecified period. *Am. Compl.* [#21] at 4. Plaintiff alleges that the temperature reached ninety degrees during the day. *Id.* As to this claim, the Court finds that Plaintiff has not pled facts that would indicate that Defendant's use of force was unreasonable.

The Supreme Court has recognized that significant exposure to the elements may be grounds for an excessive force claim. *See* Hope *v. Pelzer*, 536 U.S. 730, 737 (2002). The District of Colorado examined a Fourth Amendment extreme temperature claim in *Sequeira v. McClain*, No. 15-cv-02587-PAB-MEH, 2017 WL 1197296, at *8 (D. Colo. Mar 31, 2017). In *Sequiera*, the court deemed plaintiff's exposure to fifteen minutes of extreme cold insufficient to defeat qualified immunity. *Id.* In *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002), the Sixth Circuit Court of Appeals noted: "We agree that unnecessary

detention in extreme temperatures, like those that could be reached in an unventilated car in ninety-degree heat, violates the Fourth Amendment's prohibitions on unreasonable searches and seizures." However, in *Burchett*, the plaintiff was subjected to these circumstances for three hours. *Id.* at 940. In *Arias v. Amador*, 61 F. Supp. 3d 960, 968 (E.D. Cal. 2014), a plaintiff was locked in a police car for about fifteen minutes. In *Arias*, the court determined that an excessive force claim had not been stated as a matter of law, noting: "In sum, in cases where confinement in a vehicle amounted to excessive force, the exposure had been prolonged (i.e. three hours). In contrast, federal district courts have found that force was not excessive when the confinement lasted thirty minutes or less." *Id.* at 975-76 (citations omitted).

Here, Plaintiff has entirely omitted how long he believes he was detained in the hot police car, which is an essential element to be taken into consideration in connection with his excessive force claim. Without alleging such information, Plaintiff cannot demonstrate that the force used was objectively unreasonable. *See Estate of Larsen*, 511 F.3d at 1259.

Accordingly, the Motion [#37] is **granted** to the extent that the element of Plaintiff's claim for excessive force with regard to being detained in a hot car is **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

### IV. Conclusion

Accordingly, for the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#37] is **GRANTED in part and DENIED in part**. The Motion is **granted** to the extent that the portions of the claim concerning (1) tasings, (2) physical strikes, and (3) extreme temperature are **DISMISSED without prejudice**. *See supra* §§ III.A., B., and D. The Motion is **denied** as to the portion of the

claim concerning the blow to the stomach. *See supra* § III.C.

IT IS FURTHER **ORDERED** that Plaintiff shall file any second amended complaint further explaining the factual basis for his claim **no later than July 15, 2019**.

Dated: June 13, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge