IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02038-KLM

TIMOTHY JAMES HAYENGA,

    Plaintiff,

v.

C. GARTH, Adams County Sheriff, and
L. KESTAL, Adams County Sheriff,

    Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff's **Dispositive Motion** [#80],[1] on Plaintiff's **Second Dispositive Motion to the Defendants** [#87], and on Defendants' **Motion for Summary Judgment** [#89]. Defendants filed a joint Response [#88] to Plaintiff's two Dispositive Motions [#80, #87]. Plaintiff, who proceeds as a pro se litigant in this matter,[2] filed a Response [#92] to Defendants's Motion for Summary Judgment [#89], Defendants filed a Reply [#94], and Plaintiff filed a Surreply [#95]. The Court has reviewed the briefs,

---

[1] "[#80]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe liberally the filings of pro se litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf.*" Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, Plaintiff's Dispositive Motion [#80] and the Second Dispositive Motion [#87] are **DENIED** and Defendants' Motion for Summary Judgment [#89] is **GRANTED**.[3]

## I. Summary of the Case[4]

On June 2, 2018, at approximately 11:30 a.m., Defendants Garth and Kestel were on-duty Adams County Sheriff's Deputies assigned to the patrol division when they each were dispatched to the area of Quivira Drive and Explorador Calle in unincorporated Adams County to make contact with Plaintiff, who was wanted on a felony warrant. *Ex. B, Aff. of Garth* [#89-2] ¶ 3; *Ex. C, Aff. of Kestel* [#89-3] ¶ 3. Plaintiff's warrant was for felony drug possession with intent to distribute and for possession of a weapon by a previous offender. *Ex. C, Aff. of Kestel* [#89-3] at 3. Plaintiff knew that he would be taken into custody if he had contact with law enforcement because he knew he had an active warrant for his arrest. *Ex. A, Pl.'s Response to First Set of Discovery from Defs.* [#89-1] at 2 ¶ 3. Plaintiff did not

---

[3] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. See [#31, #47, #48].

[4] *Boyz Sanitation Serv., Inc. v. City of Rawlins, Wyo.*, 889 F.3d 1189, 1195 (10th Cir. 2018) ("Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor."); *see also Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004) ("On cross-motions for summary judgment, . . . we must view the inferences to be drawn from affidavits, attached exhibits and depositions in the light most favorable to the party that did not prevail."); *see also Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). The Court also notes here that, pursuant to 28 U.S.C. § 1746, Plaintiff has not sworn to his Second Amended Complaint [#57] under penalty of perjury, and therefore this document may not be treated as an affidavit or used as evidence on a motion for summary judgment. *Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997); *Pacheco v. Timme*, No. 11-cv-02530-RM-KLM, 2014 WL 2442111, at *4 n.2 (D. Colo. May 30, 2014).

want to be taken into custody as a result of the outstanding felony warrant. *Id.* at 2 ¶ 4.

At the time of Defendants' encounter with Plaintiff, Plaintiff was "under the influence of drugs and/or alcohol." *Id.* at 2 ¶ 2. When Defendants arrived (each in his own separate, marked patrol car), Plaintiff was walking outside on Quivira Drive, but when he saw one of the patrol cars, he turned and ran in the opposite direction towards his white Nissan Maxima. *Ex. B, Aff. of Garth* [#89-2] at 3; *Ex. C, Aff. of Kestel* [#89-3] at 3. Plaintiff got into his car, and Defendants drove in and placed their patrol cars in such a way as to box in Plaintiff's car. *Ex. B, Aff. of Garth* [#89-2] at 3; *Ex. C, Aff. of Kestel* [#89-3] at 3. Plaintiff rammed the patrol cars with his car more than once in what appeared to be an effort to flee, but when he realized that he could not move his car, he exited the passenger side of his vehicle and ran away from the scene. *Ex. B, Aff. of Garth* [#89-2] at 3; *Ex. C, Aff. of Kestel* [#89-3] at 3.

Plaintiff ran from Defendants, hopped over two fences and ran through two separate backyards. *Ex. B, Aff. of Garth* [#89-2] at 3; *Ex. C, Aff. of Kestel* [#89-3] at 3. As Plaintiff was fleeing from Defendants, Defendant Garth "observed the clip of knife" [sic] in Plaintiff's shorts. *Ex. B, Aff. of Garth* [#89-2] at 3. Defendants were able to catch up to Plaintiff and a struggle to restrain and arrest Plaintiff ensued. *Id.* at 3-4; *Ex. C, Aff. of Kestel* [#89-3] at 3-4. Defendant Kestel observed the knife in Plaintiff's pocket at this time and saw Plaintiff trying to reach for the knife during the struggle. *Ex. C, Aff. of Kestel* [#89-3] at 4. Plaintiff failed to comply with verbal commands issued by Defendants and despite being tased by both Defendants, Plaintiff remained combative, violently thrashing back and forth and actively attempting to kick Defendants. *Id.* at 3-4; *Ex. B, Aff. of Garth* [#89-2] at 3-4. Due to Plaintiff's resistive and combative behavior and failure to comply with Defendants'

commands to stop resisting, it took both Defendants to place Plaintiff in handcuffs. *Ex. B, Aff. of Garth* [#89-2] at 3-4; *Ex. C, Aff. of Kestel* [#89-3] at 4. Immediately prior to being handcuffed, Plaintiff was forcefully trying to pull away from Defendants in order to flee the scene and escape arrest. *Ex. B, Aff. of Garth* [#89-2] at 3. Plaintiff was not fully restrained even after being placed in handcuffs because he was still making attempts to kick Defendants and escape arrest. *Id.* at 4; *Ex. C, Aff. of Kestel* [#89-3] at 4. Despite being in handcuffs, Plaintiff continued to thrash back and forth in an attempt to escape by trying to break free from Defendants' grip on him. *Ex. B, Aff. of Garth* [#89-2] at 4; *Ex. C, Aff. of Kestel* [#89-3] at 4. Defendant Garth's knee was injured during the struggle, and afterward he went to North Suburban Medical Center to have his injury evaluated. *Ex. B, Aff. of Garth* [#89-2] at 4.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*,

477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works, Inc., v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt*

*Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III.  Analysis

#### A.  Plaintiff's Motions [#80, #87]

At the outset, the Court reiterates that the evidence which Plaintiff offers in opposition to summary judgment must provide more than conclusory or vague statements in order to create a genuine issue of material fact with respect to Defendants' evidence. *See Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact."). Therefore, the Court may not accept Plaintiff's "disagreements" with Defendants' supported facts unless Plaintiff directs

the Court's attention to evidence in the record which otherwise supports his "disagreements." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (stating that "mere conjecture" is an insufficient basis for denial of summary judgment). In addition, the Court disregards all statements consisting of legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

It is clear that a pro se litigant's pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This includes at the summary judgment stage of proceedings. *See Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991). The Court must overlook a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* This means that the Court may not manufacture arguments out of whole cloth for him. *Acker v. Dinwiddie*, 516 F. App'x 692, 693 (10th Cir. 2013) ("To be sure, it is well-settled that we read a pro se litigant's petition with a special solicitude. But we are not his advocates, and we cannot create arguments on his behalf out of whole cloth."); *Tucker v. United States Court of Appeals for the Tenth Circuit*, 815 F. App'x 292, 293 n.1 (10th Cir. 2020) (stating that the Court must "stop short of serving as [the pro se litigant's] advocate or crafting arguments on his behalf"); *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[T]his rule of liberal construction stops, however, at the point at which we begin to serve as his advocate."). In other words, the Court is not obligated to craft arguments and perform the necessary legal research where the pro se litigant's briefs address the opposing arguments only "in a

perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (internal quotation marks omitted).

Although Plaintiff appears to seek summary judgment in his favor on all aspects of his excessive force claim, his Motions [#80, #87] are legally deficient in a number of ways. First, to the extent Plaintiff seeks entry of summary judgment against Defendants in their official capacities, those claims were previously dismissed with prejudice as legally frivolous. *Order* [#26]. Therefore the Court cannot find that Plaintiff is entitled to summary judgment as a matter of law on any purported claims against Defendants in their official capacities.

Second, to the extent Plaintiff seeks entry of summary judgment against Defendants' supervisors, no supervisors been named as parties in the Second Amended Complaint [#57], served with this lawsuit, or had any claims asserted against them, and therefore no such claims are at issue in this lawsuit. Seeking summary judgment against non-parties is simply impermissible. Therefore the Court cannot find that Plaintiff is entitled to summary judgment as a matter of law on any purported claims against Defendants' supervisors.

Third, in its Order [#51] issued on June 13, 2019 on Defendants' Motion to Dismiss [#37], the Court clearly explained both the legal and factual requirements for Plaintiff's excessive force claim. Plaintiff's Motions [#80, #87] do not address these requirements, instead focusing on a variety of peripheral legal issues which, for the most part although not entirely, have no impact on the Court's analysis of an excessive force claim. The peripheral issues raised in Plaintiff's pleadings are: (1) Defendants' alleged "[r]eckless handling or grossly negligent collecting of evidence," (2) impeachment of Defendants' credibility, (3) Defendants' alleged deliberate indifference to Plaintiff's medical needs after

the excessive force was purportedly used, (4) Defendants' alleged failure to follow written policy and procedure, and (5) Defendants' allegedly conscious intent to harm Plaintiff. *Motions* [#80, #87].  But none of these issues address the legal and factual requirements for successful prosecution of an excessive force claim.  In short, Plaintiff has not addressed the elements of his claim in his Motions [#80, #87], and therefore the Court cannot find that he is entitled to summary judgment as a matter of law.

Finally, Plaintiff has provided references to evidence by Bates numbering but has not provided any of that evidence to the Court or directed the Court's attention to where that evidence may be located in the Court record.[5]  Where obvious, the Court has attempted to match the Bates numbers and other evidence mentioned by Plaintiff to evidence in the record, but this has been impossible for nearly all references made by Plaintiff.  Nevertheless, the Court emphasizes that it is not the Court's duty to sift through the record and undertake this task on Plaintiff's behalf, and attempts to direct the Court's attention to the precise location of any evidence purportedly supporting Plaintiff's case remain Plaintiff's responsibility.  *See* Fed. R. Civ. P. 56(c); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (stating that the general rule that pro se pleadings must be construed liberally has limits and that "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record").  In the absence of any evidence provided to the Court in support of his excessive force claim, the Court cannot find that Plaintiff is entitled to summary judgment

---

[5] There is one exception.  In Plaintiff's Second Dispositive Motion [#87], he refers to the attached Plaintiff's Response to First Set of Discovery from Defendants [#86] solely with respect to the issue of whether Plaintiff was under the influence of drugs and/or alcohol at the time of the incident.

as a matter of law.

Accordingly, Plaintiff's Dispositive Motion [#80] and Second Dispositive Motion [#87] are **DENIED**.

**C.     Defendants' Motion [#89]**

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity only applies to claims asserting individual capacity liability for civil damages.  *Harlow*, 457 U.S. at 818.

When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to satisfy a strict two-part test.  *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).  First, taking the facts in a light most favorable to the plaintiff, the plaintiff must provide evidence demonstrating that each defendant's actions violated a constitutional or statutory right.  *Id.*  Second, the plaintiff has the burden of showing that "the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.* (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995) (citations omitted)).  If the plaintiff does not meet his burden of demonstrating both of these elements, then the defendant is entitled to qualified immunity.  *Nelson*, 207 F.3d at 1206.

"When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of

the Fourth Amendment.'" *Emmett v. Armstrong*, 973 F.3d 1127, 1134 (10th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "Under the Fourth Amendment's 'objective reasonableness' standard, courts must carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Emmett*, 973 F.3d at 1134 (internal quotation marks, brackets, and ellipsis omitted). "The ultimate question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id.* at 1135 (internal quotation marks omitted).

The Court's "review of a Fourth Amendment excessive force claim looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id.* (citing *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Emmett*, 973 F.3d at 1135 (quoting *Kisela v. Hughes*, ___ U.S. ___, ___, 138 S. Ct. 1148, 1152 (2018)). "Assessing the reasonableness of the force 'requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Emmett*, 973 F.3d at 1135 (quoting *Graham*, 490 U.S. at 396).

The three Graham factors must be considered "at the precise moment that the officer used force." *See Estate of Ronquillo by & through Estate of Sanchez v. City & Cty. of Denver*, 720 F. App'x 434, 438 (10th Cir. 2017) (citing *Thomas v. Durastanti*, 607 F.3d

655, 664 (10th Cir. 2010) ("We must consider whether Agent Durastanti could have reasonably perceived he was in danger at the precise moment that he used force . . . .")); *accord Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995) ("The reasonableness of Defendants' actions depends . . . on whether the officers were in danger at the precise moment that they used force . . . ."). Thus, courts will frequently divide an excessive force claim asserting multiple uses of force by separately analyzing each use of force to determine whether the force was constitutionally permissible at the precise moment it was used. *See, e.g.*, *McCoy v. Meyers*, 887 F.3d 1034, 1048 (10th Cir. 2018) (bifurcating excessive force claim analysis between pre-restraint conduct (consisting of striking the plaintiff and placing him in a carotid restraint) and post-restraint conduct (consisting of again striking him and placing him in a second carotid restraint)); *Harper v. Rose*, No. 1:09-cv-153-TC, 2012 WL 1150463, at *3 (D. Utah Apr. 5, 2012) (separating excessive force claim into three events to aid analysis: (1) an initial tasing, (2) a "drive-stun," and (3) a fight on the ground). The Court need not break up an excessive force claim into separate incidents of force if there is no analytical benefit to doing so. *See, e.g.*, *Alusa v. Salt Lake County*, No. 2:11-cv-184, 2013 WL 3946574, at *8 (D. Utah Aug. 1, 2013) (denying request to bifurcate analysis of excessive force claim into two separate incidents of force because there would not be "any benefit"). In other words, to the extent analysis of the *Graham* factors is not materially impacted, multiple uses of force may be analyzed together. *See id.* Thus, to the extent analysis of the *Graham* factors is materially impacted, multiple uses of force should be analyzed separately. *See, e.g.*, *Estate of Ronquillo*, 720 F. App'x at 439-40 (on appeal from dismissal under Fed. R. Civ. P. 12(b)(6), separately analyzing single excessive force claim as two independent instances of force consisting of (1) forcible

removal from vehicle, and (2) subsequent use of deadly force).

Here, the Court must first clarify which aspects of Plaintiff's excessive force claim remain in this lawsuit.  In connection with the adjudication of Defendants' Motion to Dismiss for Failure to State a Claim [#37] regarding Plaintiff's excessive force claim as asserted in the Amended Complaint [#21], the Court stated: "Plaintiff's interactions with Defendants during the course of his arrest present four critical points which are analytically distinct . . . . : (1) the two tasings while Plaintiff was actively fleeing; (2) the physical strikes by Defendants after Plaintiff was caught but before he was restrained; (3) the blow to Plaintiff's stomach after he was handcuffed; and (4) Plaintiff's time spent waiting in a hot car."  *Order* [#51] at 9-10.  Ultimately, the Court denied the motion to dismiss with respect to the portion fo the claim concerning (3) the blow to Plaintiff's stomach after he was handcuffed.  *Id.* at 17-18.  The Court dismissed without prejudice the claims related to events (1), (2), and (4), with leave to file a Second Amended Complaint to better explain the factual bases for these aspects of his claim.  *Id.*  Plaintiff timely filed a Second Amended Complaint [#57] on June 27, 2019, stating that "the force used on me after the first initial tasing was very unreasonable," and otherwise again discussing all four aspects of his excessive force claim.  Defendants filed an Answer [#60] in response to the Second Amended Complaint [#57].

In the present Motion for Summary Judgment, Defendants state that "the only issue left to resolve in this matter is whether or not the Defendants used excessive force when they allegedly struck Plaintiff in the stomach after he was handcuffed."  *See* [#89] at 2.  However, based on the Court's procedural recitation above, it is clear that all aspects of Plaintiff's excessive force claim (except for the first use of the Taser) remain at issue in this

lawsuit. The portions of this claim regarding the subsequent tasing(s), the physical strikes before Plaintiff was handcuffed, and Plaintiff's time spent waiting in a hot car were dismissed *without prejudice with leave to amend* on June 13, 2019. *Order* [#51] at 17-18. Plaintiff timely filed a Second Amended Complaint, as permitted, on June 27, 2019, addressing all aspects of his excessive force claim. Thus, except for the first use of the Taser, as conceded in the Second Amended Complaint [#57], the Court finds that all aspects of Plaintiff's claims originally discussed by the Court in Order [#51] remain at issue.[6]

Defendants' Motion [#89] only seeks entry of summary judgment on the blow-to-the-stomach issue. While *all* remaining aspects of Plaintiff's excessive force claim could be addressed based on Defendants' concluding request that "all claims against them be dismissed with prejudice as there are no genuine issues of material fact and all of the claims presented by Plaintiff fail as a matter of law," doing so would be manifestly unfair to Plaintiff. As indicated above, Plaintiff is not only a pro se litigant, but elsewhere in their Motion for Summary Judgment, Defendants state that the only issue they are addressing is the blow to the stomach. *See* [#89] at 2. Thus, based on this argument, Plaintiff was only required to present evidence regarding the blow-to-the-stomach aspect of his claim. Therefore, the Court only addresses this aspect of the claim as well.

---

[6] Defendants chose to file an Answer [#60] to the Second Amended Complaint [#57] rather than a second motion to dismiss under Fed. R. Civ. P. 12(b)(6) or a motion for a more definite statement under Fed. R. Civ. P. 12(e). If Defendants believed, as stated in the present Motion [#89], that only the blow-to-the-stomach issue remained, it is unclear why Defendants did not file a motion to dismiss Defendant Garth since Plaintiff's Second Amended Complaint clearly alleges that Defendant Kestal was the one who punched him in the stomach after being handcuffed. *See* [#57] at 3.

Before proceeding to the merits, the Court must make one final observation regarding the "blow to the stomach" issue. First, Plaintiff's Amended Complaint states that he was "punched in the stomach while handcuffed." *See* [#21] at 4. This was the alleged instance of excessive force which survived Defendants' Motion to Dismiss [#37]. *Order* [#51]. In his subsequently-filed Second Amended Complaint, Plaintiff states: "Now I'm placed in handcuffs and yanked to my feet by Officer Kestal. This is when he, Officer Kestal, punches me, unprovoked, in the stomach." *See* [#57] at 3. Defendants denied this allegation in their Answer [#60], and, beyond Plaintiff's unsworn and unsubstantiated statement, there is no evidence cited in the briefs that the blow to the stomach ever actually happened. However, the Court independently located Plaintiff's statement in his Response to First Set of Discovery from Defendants (attached to his Second Dispositive Motion [#87]) that, "with the Plaintiff in handcuffs, Deputy Kestal assists the Plaintiff to his feet and delivered an unprovoked blow to the stomach." *See* [#86] at 3 ¶ 7. Thus, the Court proceeds to its analysis of the *Graham* factors under the assumption that this event occurred.

### a. Severity of Crime at Issue

Courts weigh two major considerations when contemplating the severity of a crime under the *Graham* factors. First, the felony or misdemeanor status of the crime is an essential consideration. *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Second, whether the crime at issue is accompanied by violence is an important consideration. *Estate of Ronquillo*, 720 F. App'x at 438.

The first Graham factor, the severity of the crime, favors Defendants. Plaintiff's warrant was for felony drug possession with intent to distribute and for possession of a

weapon by a previous offender. *Ex. C, Aff. of Kestel* [#89-3] at 3. Plaintiff's warrant regarding possession of a weapon by a previous offender concerns Colo. Rev. Stat. § 18–12–108 (2018), which is a felony and carries a minimum sentence of one year in prison. Colo. Rev. Stat. §18–1.3–401 (2018). Felonies are deemed more severe than when the underlying crime is a municipal code violation or a misdemeanor, for which the weight of this factor would typically favor a plaintiff. *See Clark v. Bowcutt*, 675 F. App'x 799, 807 (10th Cir. 2017); *Hinton v. City of Elwood*, 997 F.3d 774, 781 (10th Cir. 1993); *White v. Martin*, 425 F. App'x 736, 745 (10th Cir. 2011). As a result, given the warrant for Plaintiff's arrest based on a weapons offense, this factor weighs in favor of Defendants.

### b. Immediacy of Threat to Officers or Others

"The second *Graham* factor, whether the suspect posed an immediate threat to the safety of the officers or others is undoubtedly the most important." *Emmett*, 973 F.3d at 1136. The Court must examine "whether the officers [or others] were in danger at the precise moment that they used force." *Id.*

When considering the threat that the plaintiff posed to the defendants, courts inquire as to whether the plaintiff could reasonably be seen as dangerous. *Estate of Ronquillo*, 720 F. App'x at 438. To this end, the court in *Waters v. Coleman* reiterated that "[i]t is well-established that '[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back the officer would be justified in using more force than in fact was needed.'" 632 F. App'x 431, 438 (10th Cir. 2015) (quoting *Jiron*, 392 F.3d at 415). Furthermore, if the plaintiff was violent during the encounter, this factor can weigh against the plaintiff. *Casey*, 509 F.3d at 1281. Finally, whether the plaintiff brandished a weapon or made threats toward the officers is also considered when weighing this factor. *Thomson*

*v. Salt Lake County*, 584 F.3d 1304, 1319-1320 (10th Cir. 2009).

The ultimate question is whether Plaintiff could "reasonably have been seen as dangerous" to Defendants and others at the time when the blow to his stomach occurred. *Casey*, 509 F.3d at 1281. According to Defendant Garth, "[a]fter [Plaintiff] was handcuffed, he began to thrash back and forth in another attempt to escape. I felt pain in my left knee and realized it was injured during the fight with [him]." *Ex. B, Aff. of Garth* [#89-2] at 4. According to Defendant Kestal, "[a]fter [Plaintiff] was placed into custody he continued to try to break Deputy Garth['s] and my grip. I was able to get the black folding knife out of [Plaintiff]'s pocket and he was searched for additional weapons. . . . [Plaintiff] kept yelling how he had the title for the vehicle in his pocket." *Ex. C, Aff of Kestal* [#89-3] at 4.

Little in these statements shows that Plaintiff could have justifiably been seen as dangerous after he was placed in handcuffs. Although Plaintiff had a weapon in his pocket, there is no indication that he could reach this weapon while handcuffed, and while he was resistive (which goes more to the third *Graham* factor), there is no indication in Defendants' statements that the manner of Plaintiff's resistance posed any real threat to the officers after Plaintiff was handcuffed. In addition, although Defendant Garth incurred some injury during the encounter from Plaintiff's struggles, this appears to have occurred during the struggle prior to the handcuffing. Ultimately, the Court finds that this factor weighs in favor of Plaintiff, because the threat to Defendants was greatly diminished by his handcuffing. *See Fischer v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009).

    **c. Active Resistance or Attempt to Evade Arrest**

When weighing the third *Graham* factor, a "key fact" in determining whether Plaintiff has stated an excessive force claim is whether Plaintiff has alleged that he was or was not

-17-

struggling or resisting at the time force was applied. *See Waters*, 632 F. App'x at 437-38 ("The key fact here is that while Officer Jones was applying force, Mr. Ashley was resisting being taken into custody. . . . [T]he key fact is that the struggle was ongoing when Officer Coleman applied the force that is complained of."). Further, "precedent is clear that continued use of force after an individual has been subdued is a violation of the Fourth Amendment." *Perea v. Baca*, 817 F.3d 1198, 1205 (10th Cir. 2016).

The Court finds that the third *Graham* factor weighs in favor of Defendants. Plaintiff was in handcuffs by the time of the alleged punch, but the evidence is that Plaintiff continued to actively resist even after being placed in handcuffs. According to Defendant Garth, "[a]fter [Plaintiff] was handcuffed, he began to thrash back and forth in another attempt to escape." *Ex. B, Aff. of Garth* [#89-2] at 4. According to Defendant Kestal, "[a]fter [Plaintiff] was placed into custody he continued to try to break Deputy Garth[']s and my grip." *Ex. C, Aff of Kestal* [#89-3] at 4. Plaintiff conclusorily states that the blow was "unprovoked," but this statement, standing alone with no additional detail, is insufficient to create a genuine issue of material factor regarding whether he was resisting. *See Bones*, 366 F.3d at 875 (stating that conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence); 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. 2017) (stating that the nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded); *Pl.'s Response to First Set of Discovery from Defs.* [#86] at 2-3 ¶ 6. Based on this evidence, the Court finds that this factor weighs in favor of Defendants.

Weighing the *Graham* factors based on the evidence before the Court, the Court

finds that there is no genuine issue of material fact, and the Court concludes as a matter of law that Plaintiff's excessive force claim fails to the extent it is based on a purported single blow to the stomach during his arrest after he was handcuffed.

Alternatively, even were the Court to conclude that there is sufficient evidence to bring this aspect of Plaintiff's claim to a jury, the Court further finds that Plaintiff has failed to show the violation of a clearly established right under these circumstances. Plaintiff has directed the Court's attention to no case, and the Court has found none, where officers were attempting to subdue an actively resisting person in handcuffs and where a single hit such as a blow to the stomach was deemed a violation of a clearly established constitutional right. Accordingly, Defendants are entitled to qualified immunity.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Dispositive Motion [#80] and the Second Dispositive Motion [#87] are **DENIED**.

IT IS FURTHER **ORDERED** that Defendants' Motion [#89] is **GRANTED**. Summary judgment shall enter in favor of Defendants with respect to Plaintiff's excessive force claim premised on a blow to the stomach after being handcuffed.

Thus, these aspects of Plaintiff's excessive force claim remain for trial: (1) Did Defendant Kestal use excessive force when he purportedly used his Taser on Plaintiff? (2) Did Defendants use excessive force when they purportedly physically struck Plaintiff before Plaintiff was handcuffed? (3) Did Defendants use excessive force by purportedly leaving Plaintiff in a hot patrol car for an extended period?

Dated: October 21, 2020

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge